## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEFFREY JOHNSON, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CENTERSTATE BANK CORPORATION, ERNEST S. PINNER, CHARLES W. MCPHERSON, JAMES H. BINGHAM, MICHAEL J. BROWN, SR., CHARLES DENNIS CARLTON, MICHAEL F. CIFERRI, JOHN C. CORBETT, JODY JEAN DREYER, GRIFFIN A. GREENE, JOHN H. HOLCOMB III, RICHARD MURRAY IV, GEORGE TIERSO NUNEZ, THOMAS E. OAKLEY, G. RUFFNER PAGE, JR., WILLIAM KNOX POU, JR., DANIEL ROBERT RICHEY, DAVID G. SALYERS, JOSHUA A. SNIVELY, SR., and MARK W. THOMPSON,<br><br>Defendants. | Case No. 1:20-cv-2905<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Jeffrey Johnson ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

### NATURE OF THE ACTION

1.      This action is brought as a class action by Plaintiff on behalf of himself and the other public holders of the common stock of CenterState Bank Corporation ("CenterState" or the "Company") against the Company and the members of the Company's board of directors (collectively, the "Board" or "Individual Defendants" and, together with CenterState, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, in connection with the proposed merger (the "Proposed Transaction") between CenterState and

South State Corporation ("South State").

2.      On January 25, 2020, the Board caused the Company to enter into an agreement and plan of merger ("Merger Agreement"), pursuant to which the Company's shareholders stand to receive 0.3001 shares of South State common stock for each share of CenterState stock they own (the "Merger Consideration"). Upon completion of the merger, CenterState shareholders will own approximately 53% and South State shareholders will own approximately 47% of the combined company.

3.      On March 16, 2019, in order to convince CenterState shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading Form S-4 Registration Statement (the "S-4") with the Securities and Exchange Commission ("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act. The materially incomplete and misleading S-4 violates SEC Rule 14a-9 (17 C.F.R. § 240.14a-9).

4.      While touting the fairness of the Merger Consideration to the Company's shareholders in the S-4, Defendants have failed to disclose certain material information that is necessary for shareholders to properly assess the fairness of the Proposed Transaction, thereby violating SEC rules and regulations and rendering certain statements in the S-4 materially incomplete and misleading.

5.      In particular, the S-4 contains materially incomplete and misleading information concerning the summary of certain valuation analyses conducted by the Company's financial advisor, Keefe, Bruyette & Woods, Inc. ("KBW") in support of its opinion that the Merger Consideration is fair to shareholders, on which the Board relied.

6.    It is imperative that the material information that has been omitted from the S-4 is disclosed prior to the forthcoming vote to allow the Company's shareholders to make an informed decision regarding the Proposed Transaction.

7.    For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act based on Defendants' violation of Rule 14a-9 (17 C.F.R. § 240.14a-9).  Plaintiff seeks to enjoin Defendants from holding the shareholder vote on the Proposed Transaction and taking any steps to consummate the Proposed Transaction unless, and until, the material information discussed below is disclosed to CenterState shareholders sufficiently in advance of the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8.    This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

9.    Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

10.    Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because a substantial portion of the alleged wrongs took

place in this District and the Company's common stock trades on the NASDAQ Composite, which is headquartered in this District.

## PARTIES

11.    Plaintiff is, and at all relevant times has been, a holder of CenterState common stock.

12.    Defendant CenterState is incorporated in Florida and maintains its principal executive offices at 1101 First Street South, Suite 202, Winter Haven, Florida 33880. The Company's common stock trades on the NASDAQ under the ticker symbol "CSFL."

13.    Individual Defendant Ernest S. Pinner is CenterState's Executive Chairman and has been a director of CenterState at all relevant times.

14.    Individual Defendant Charles W. McPherson is CenterState's Lead Director and has been a director of CenterState at all relevant times.

15.    Individual Defendant James H. Bingham has been a director of CenterState at all relevant times.

16.    Individual Defendant Michael J. Brown, Sr. has been a director of CenterState at all relevant times.

17.    Individual Defendant Charles Dennis Carlton has been a director of CenterState at all relevant times.

18.    Individual Defendant Michael F. Ciferri has been a director of CenterState at all relevant times.

19.    Individual Defendant John C. Corbett has been a director of CenterState at all relevant times.

20.    Individual Defendant Jody Jean Dreyer has been a director of CenterState at all relevant times.

21.    Individual Defendant Griffin A. Greene has been a director of CenterState at all relevant times.

22.    Individual Defendant John H. Holcomb III has been a director of CenterState at all relevant times.

23.    Individual Defendant Richard Murray IV has been a director of CenterState at all relevant times.

24.    Individual Defendant George Tierso Nunez has been a director of CenterState at all relevant times.

25.    Individual Defendant Thomas E. Oakley has been a director of CenterState at all relevant times.

26.    Individual Defendant G. Ruffner Page, Jr. has been a director of CenterState at all relevant times.

27.    Individual Defendant William Knox Pou, Jr. has been a director of CenterState at all relevant times.

28.    Individual Defendant Daniel Robert Richey has been a director of CenterState at all relevant times.

29.    Individual Defendant David G. Salyers has been a director of CenterState at all relevant times.

30.    Individual Defendant Joshua A. Snively, Sr. has been a director of CenterState at all relevant times.

31.     Individual Defendant Mark W. Thompson has been a director of CenterState at all relevant times.

32.     The Individual Defendants referred to in paragraphs 13-31 are collectively referred to herein as the "Individual Defendants" and/or the "Board."

## CLASS ACTION ALLEGATIONS

33.     Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public shareholders of CenterState (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

34.     This action is properly maintainable as a class action because:

a.     The Class is so numerous that joinder of all members is impracticable. As of March 10, 2020, there were approximately 126,000,000 shares of CenterState common stock outstanding, held by hundreds of individuals and entities scattered throughout the country. The actual number of public shareholders of CenterState will be ascertained through discovery;

b.     There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

i)     whether Defendants have misrepresented or omitted material information concerning the Proposed Transaction in the S-4 in violation of Section 14(a) of the Exchange Act;

ii)     whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

iii)     whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their shares regarding the Proposed Transaction based on the materially incomplete and misleading S-4.

c.      Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

d.      Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e.      The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

f.      Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

g.      A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## SUBSTANTIVE ALLEGATIONS

I.      **The Proposed Transaction**

35.     CenterState is a financial holding company that provides a range of consumer and commercial banking services to individuals, businesses and industries through its national bank subsidiary, CenterState Bank, N.A. The Company also operates a correspondent banking and

capital markets service division for over 650 small and medium sized community banks throughout the United States.

36.     January 27, 2020, CenterState and South State issued a joint press release announcing the Proposed Transaction, which states in pertinent part:

> WINTER HAVEN, Fla. & COLUMBIA, S.C.--(BUSINESS WIRE)--CenterState Bank Corporation (NASDAQ: CSFL) ("CenterState"), the parent company of CenterState Bank, and South State Corporation (NASDAQ: SSB) ("South State"), the parent company of South State Bank, jointly announced today that they have entered into a definitive agreement under which the companies will combine in an all-stock merger of equals with a total market value of approximately $6 billion to create a leading Southeastern-based regional bank.
>
> Under the terms of the merger agreement, which was unanimously approved by the Boards of Directors of both companies, CenterState shareholders will receive 0.3001 shares of South State common stock for each share of CenterState common stock they own. CenterState shareholders will own approximately 53% and South State shareholders will own approximately 47% of the combined company.
>
> The combined company will operate under the South State Bank name and will trade under the South State ticker symbol SSB on the Nasdaq stock market. The company will be headquartered in Winter Haven, Florida and will maintain a significant presence in Columbia and Charleston, South Carolina; Charlotte, North Carolina; and Atlanta, Georgia.
>
> Robert R. Hill, Jr., CEO of South State, will serve as Executive Chairman of the combined company. John C. Corbett, CEO of CenterState, will be CEO of the combined company. The Board of Directors of the combined company will consist of sixteen directors evenly split between the two legacy companies.
>
> "We are excited to partner with CenterState," said Robert R. Hill, Jr. "We have great respect for John, the management team and the company CenterState has built. This is a great combination of cultures, which will create tremendous value for our shareholders."
>
> "We have known and admired Robert and his team for over a decade, and we believe our two organizations are an outstanding fit," said John C. Corbett, CEO of CenterState. "Combining these two high-performing teams will allow us to build an even stronger company together."
>
> **Strategically Compelling for Both Organizations**
>
> - **Enhanced Scale to Drive Growth and Improve Profitability:** The pro

forma organization, with approximately $34 billion in assets and $26 billion in deposits, combines two high-quality companies with comparable credit and management philosophies.

- **Strengthens Both Companies:** This merger combines two highly respected management teams operating complementary business lines. It also diversifies the geographies of each company into a contiguous six-state footprint, spanning from Florida to Virginia.
- **Combines Two Strong Core Deposit Franchises and High-Quality Loan Portfolios:** The combined company will benefit from the combination of two low-cost core-funded deposit bases and high-quality loan portfolios, providing a stable source of funds and customers.
- **High-Growth Markets:** The organization will have locations in 10 of the 15 fastest growing Metropolitan Statistical Areas (MSAs) in the Southeast and will have a pro forma deposit-weighted population growth of 6%. The combined company will have a presence in seven of the ten most populous markets in the Southeast.
- **Experienced and Compatible Management Teams:** The management teams of the two companies have extensive experience and operate with very similar philosophies and values. Each management team has successfully completed numerous mergers and acquisitions and the subsequent integrations of systems and teams.

**Financially Attractive Metrics for Shareholders**

- **Significant Earnings Per Share Accretion:** The transaction is projected to deliver in excess of 20% EPS accretion to South State once cost saves are fully phased in, with minimal tangible book value dilution and a TBVPS earnback period of less than one year.
- **Cost Synergies:** The companies have identified $80 million in expected annual net cost savings fully phased in by 2022, representing approximately 10% of projected 2020 combined non-interest expenses.
- **Leading Pro Forma Profitability:** On a pro forma basis, the combined company is expected to deliver robust profitability metrics.

**Executive Leadership**

The merger will combine the executive management teams from both organizations. In addition to Robert Hill, Executive Chairman, and John Corbett, CEO, the executive team of the combined company will include three members from each legacy company.

CenterState Leadership

South State Leadership

Will Matthews, Chief Financial Officer

Renee Brooks, Chief Operating Officer

Steve Young, Chief Strategy Officer

Greg Lapointe, Chief Banking Officer

Richard Murray, President

John Pollok, SEVP & Board Member

**Approval and Timing**

The merger is expected to close in the third quarter of 2020, subject to satisfaction of customary closing conditions, including receipt of customary regulatory approvals and approval by the shareholders of each company.

**Transaction Advisors**

Piper Sandler & Co. served as financial advisor to South State, with Wachtell, Lipton, Rosen & Katz serving as legal advisor.

Keefe, Bruyette & Woods, A Stifel Company, served as financial advisor to CenterState, with Davis Polk & Wardwell LLP serving as legal advisor.

**Joint Investor Conference Call**

There will be a joint conference call to discuss the transaction at 8:30 a.m. Eastern Time today. To listen to the live call, please dial 877-506-9272 within the U.S. and 412-380-2004 for all other locations and enter the participant code 10138864. The live webcast, along with the related presentation, will be available on the investor relations section of each company's website at http://www.southstatebank.com/ and https://www.centerstatebank.com/. An audio replay will be available beginning at 2:00 p.m. Eastern Time on January 27, 2020. To access the replay, dial 877-344-7529 and use conference number 10138864. International callers should dial 412-317-0088 and enter the same conference number. This replay, as well as the webcast, will be available through February 10, 2020 at 9:00 a.m. Eastern Time.

For more information and a message from our CEOs please visit BankingForward.com

**About CenterState**

CenterState operates as one of the leading Southeastern regional bank franchises headquartered in the state of Florida. Both CenterState and its nationally chartered bank subsidiary, CenterState Bank, N.A. (the "Bank"), are based in Winter Haven, Florida, between Orlando and Tampa. With over $17 billion in assets, the Bank provides traditional retail, commercial, mortgage, wealth management and SBA services throughout its Florida, Georgia and Alabama branch network and customer relationships in neighboring states. The Bank also has a national footprint, serving clients coast to coast through its correspondent banking division.

**About South State**

South State Corporation is a financial services company headquartered in Columbia, South Carolina with approximately $15.9 billion in assets. South State Bank, the company's primary subsidiary, provides consumer, commercial, mortgage, and wealth management solutions throughout the Carolinas, Georgia and Virginia. South State has served customers since 1934.

37.    CenterState is well-positioned for financial growth and the Merger Consideration fails to adequately compensate the Company's shareholders.  It is imperative that Defendants disclose the material information they have omitted from the S-4, discussed in detail below, so that the Company's shareholders can properly assess the fairness of the Merger Consideration for themselves and make an informed decision concerning whether or not to vote in favor of the Proposed Transaction.

38.    If the false and/or misleading S-4 is not remedied and the Proposed Transaction is consummated, Defendants will directly and proximately have caused damages and actual economic loss (i.e., the difference between the value to be received as a result of the Proposed Transaction and the true value of their shares prior to the merger), in an amount to be determined at trial, to Plaintiff and the Class.

## II.    The Materially Incomplete and Misleading S-4

39.    On March 16, 2020, Defendants caused the S-4 to be filed with the SEC in connection with the Proposed Transaction.  The S-4 solicits the Company's shareholders to vote in favor of the Proposed Transaction.  Defendants were obligated to carefully review the S-4 before

it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the S-4 misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### *The Materially Misleading Financial Analyses*

40.     With respect to KBW's *South State and CenterState Selected Companies Analysis* and *Pro Forma Selected Companies Analysis*, the S-4 discloses KBW calculated multiple financial ratios for the selected comparable companies including non-GAAP metrics such as Tangible Common Equity to Tangible Assets. S-4 93-96. The S-4 fails to disclose the individual multiples calculated for each comparable company. This is material because since non-GAAP metrics were included in the analysis, shareholders cannot be sure the metrics were calculated the same. Shareholders need to know the individual multiples for each company to be able to determine that the calculated multiples are actually comparable to the Company, allowing shareholders to adequately determine the value of their shares.

41.     With respect to KBW's *Selected Transactions Analysis*, the S-4 discloses KBW analyzed five metrics for the 8 selected merger transactions. *Id.* at 97-98. The S-4 fails to disclose the individual multiples for each transaction, the announcement date, when, and if, the transaction has closed, or the size of the merger.

42.     With respect to KBW's *Financial Impact Analysis*, KBW performed a pro forma financial impact analysis that combined the projected income statement and balance sheet information of South State and CenterState. *Id.* at 99. The S-4 fails to disclose the "street value" estimates utilized by KBW in the analysis, the magnitude of how accredititive to estimates of 2020, 2021 and 2022 earnings per share the Proposed Transaction could be, the magnitude of how

dilutive to estimates of tangible book value per share as of June 30, 2020 the Proposed Transaction could be, and the magnitude of how much lower tangible common equity to tangible assets ratio, Leverage Ratio, Common Equity Tier 1 Ratio, Tier 1 Capital Ratio and Total Risk-based Capital Ratio, as of June 30, 2020, due to the Proposed Transaction could be. *Id.*

43.    KBW performed three discounted cash flow analyses ("DCFs"): one to value CenterState, one to value South State, and one to value the pro forma company. With respect to KBW's *CenterState Discounted Cash Flow Analysis*, the S-4 states that using "street estimates" for CenterState and long term growth rates as provided by the Company's management, KBW performed a DCF analysis by adding the present value of the excess cash flows that CenterState was expected to generate over the period from January 1, 2020 through December 31, 2024 as a standalone company and the present value of the implied terminal value. *Id.* To calculate the terminal value, KBW applied a multiple range of 11.0x to 15.0x to the Company's estimated 2025 earnings. *Id.* at 99-100. KBW used a discount rate range of 7% to 11% for the analysis. *Id.* at 99-100.

44.    With respect to KBW's *South State Discounted Cash Flow Analysis*, the S-4 states that using "street estimates" for South State and long term growth rates as provided by South State's management, KBW performed a DCF analysis by adding the present value of the excess cash flows that South State was expected to generate over the period from January 1, 2020 through December 31, 2024 as a standalone company and the present value of the implied terminal value. *Id.* at 99.  To calculate the terminal value, KBW applied a multiple range of 11.0x to 15.0x to South State's estimated 2025 earnings. *Id.* KBW used a discount rate range of 7% to 11% for the analysis. *Id.*

45. With respect to KBW's *Pro Forma Combined Discounted Cash Flow Analysis*, the S-4 states that KBW performed a DCF analysis on the pro forma company on a combined basis, taking into account the cost savings and related expenses expected to result from the Merger, as well as certain purchase accounting adjustments and restructuring charges to be assumed. *Id.* at 100. KBW used the same "street estimate" values and long-term growth rates for the companies as in their respective standalone DCF analyses, and the estimated cost savings and related expenses and purchase accounting adjustments and restructuring charges were provided by South State and CenterState managements. *Id.* KBW used a discount rate range of 6.5% to 10.5% and terminal value multiple range of 11.0x to 15.0x. *Id.*

46. With respect to all three of KBW's DCF analyses, the S-4 fails to disclose the values of the "street estimates," the estimated excess cash flows and the estimated cost savings and related expenses and purchase accounting adjustments and restructuring charges, whether cost of equity or weighted average cost of capital was used as the discount rate, any of the inputs that went into calculating the discount rate, the inputs and assumptions that went into the selection of the terminal value multiples, if any adjustments were made, how stock based compensation was treated or the fully diluted shares outstanding for the companies.

47. Since information was omitted, shareholders are unable to discern the veracity of KBW's discounted cash flow analyses. Without further disclosure, shareholders are unable to compare KBW's calculations with the Company's financial projections. The absence of any single piece of the above information renders KBW's discounted cash flow analyses incomplete and misleading. Thus, the Company's shareholders are being materially misled regarding the value of the Company.

48.     As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow analysis a banker takes management's projections and then makes several key choices "each of which can significantly affect the final valuation." Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate discount rate, and the terminal value . . . " *Id*. (footnote omitted).  As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value . . .  The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness.  This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions[.]

*Id.* at 1577-78 (footnotes omitted).

49.     Therefore, in order for CenterState shareholders to become fully informed regarding the fairness of the Merger Consideration, the material omitted information must be disclosed to shareholders.

50.     In sum, the S-4 violates Rule 14a-9, since the material omitted information renders certain statements, discussed above, materially incomplete and misleading.   As the S-4 independently contravenes the SEC rules and regulations, Defendants violated Section 14(a) and Section 20(a) of the Exchange Act by filing the S-4 to garner votes in support of the Proposed Transaction from CenterState shareholders.

51.     Absent disclosure of the foregoing material information prior to the special shareholder meeting to vote on the Proposed Transaction, Plaintiff and the other members of the Class will not be able to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

52.     Further, failure to remedy the deficient S-4 and consummate the Proposed Transaction will directly and proximately cause damages and actual economic loss to shareholders (i.e. the difference between the value to be received as a result of the Proposed Transaction and the true value of their shares prior to the merger), in an amount to be determined at trial, to Plaintiff and the Class.

## COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)**

53.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

54.     SEC Rule 14a-9 prohibits the solicitation of shareholder votes in registration statements that contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading[.]" 17 C.F.R. § 240.14a-9(a).

55.     Defendants have issued the S-4 with the intention of soliciting shareholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the S-4, which fails to provide critical information regarding, amongst other things, the financial projections for the Company.

56.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as directors and/or officers, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were

misstated or omitted from the S-4 but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

57.    The Individual Defendants knew or were negligent in not knowing that the S-4 is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

58.    The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the S-4, rendering the sections of the S-4 identified above to be materially incomplete and misleading.

59.    The Individual Defendants were, at the very least, negligent in preparing and reviewing the S-4. The preparation of a registration statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the S-4 or failing to notice the material omissions in the S-4 upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

60.    CenterState is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the S-4.

61.    The misrepresentations and omissions in the S-4 are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

62.    As a direct and proximate result of the dissemination of the false and/or misleading

S-4 Defendants used to recommend that shareholders approve the Proposed Transaction, Plaintiff and the Class will suffer damages and actual economic losses (i.e. the difference between the value they will receive as a result of the Proposed Transaction and the true value of their shares prior to the merger) in an amount to be determined at trial and are entitled to such equitable relief as the Court deems appropriate, including rescissory damages.

## COUNT II

**(Against the Individual Defendants for Violations
of Section 20(a) of the Exchange Act)**

63.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

64.     The Individual Defendants acted as controlling persons of CenterState within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors and/or officers of CenterState, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the S-4 filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

65.     Each of the Individual Defendants was provided with or had unlimited access to copies of the S-4 and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

66.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had

the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein and exercised the same.  The S-4 at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in preparing the S-4.

67.     In addition, as the S-4 sets forth at length, and as described herein, that the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The S-4 purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

68.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

69.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B.     Enjoining Defendants and all persons acting in concert with them from proceeding with the shareholder vote on the Proposed Transaction or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been

omitted from the S-4;

C.    Directing Defendants to account to Plaintiff and the Class for all damages sustained

as a result of their wrongdoing and to award damages arising from proceeding with the Proposed

Transaction;

D.    Awarding Plaintiff the costs and disbursements of this action, including reasonable

attorneys' and expert fees and expenses; and

E.    Granting such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated:  April 8, 2020

Respectfully submitted,

**FARUQI & FARUQI, LLP**

By:  _/s/ James M. Wilson, Jr._

Nadeem Faruqi
James M. Wilson, Jr.
685 Third Avenue, 26th Floor
New York, NY 10017
Tel.: (212) 983-9330
Fax: (212) 983-9331
Email: nfaruqi@faruqilaw.com
        jwilson@faruqilaw.com

_Counsel for Plaintiff_

## CERTIFICATION OF PROPOSED LEAD PLAINTIFF

I, Jeffrey Johnson ("Plaintiff"), declare, as to the claims asserted under the federal securities laws, that:

1.    Plaintiff has reviewed a draft complaint against CenterState Bank Corporation ("CenterState") and its board of directors and has authorized the filing of a complaint substantially similar to the one I reviewed.

2.    Plaintiff selects Faruqi & Faruqi, LLP and any firm with which it affiliates for the purpose of prosecuting this action as my counsel for purposes of prosecuting my claim against defendants.

3.    Plaintiff did not purchase the security that is the subject of the complaint at the direction of Plaintiff's counsel or in order to participate in any private action arising under the federal securities laws.

4.    Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

5.    Plaintiff's transactions in CenterState securities that are the subject of the complaint during the class period specified in the complaint are set forth in the chart attached hereto.

6.    In the past three years, Plaintiff has not sought to serve nor has served as a representative party on behalf of a class in an action filed under the federal securities laws, except as specified below:

7.    Plaintiff will not accept any payment for serving as a representative party on behalf of a class beyond plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

I declare under penalty of perjury under the laws of the United States that the foregoing information is correct to the best of my knowledge.

Signed this 6th day of April, 2020.

_____
Jeffrey Johnson

| Transaction (Purchase or Sale) | Trade Date | Quantity |
|---|---|---|
| Purchase | 07/24/19 | 450 |
| | | |
| | | |